NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| A.P. CONSTRUCTION, INC. | : |
| Plaintiff, | : Civil Action No. 06-CV-1011 (PGS) |
| v. | : |
| ATLANTIC MUTUAL INSURANCE COMPANY and CENTENNIAL INSURANCE COMPANY | : OPINION |
| Defendant. | : |

**SHERIDAN, U.S.D.J.**

    Defendants move for summary judgment, maintaining that the plaintiff's claim against the co-sureties is time barred under the Public Works Bond Act (N.J.S.A. 2A:44-143, et. seq.). While plaintiff does not dispute the applicability of the Act, plaintiff argues that important statutory terms are undefined and clarification found within the Subcontract Agreement supports plaintiff's contention that its claim is not time barred.

    On May 13, 2002, New Jersey Transit Corporation ("Transit") entered into a written contract with R.M. Shoemaker Co. ("Shoemaker") to design and build a public works and improvement construction project known as the "Route 17 Regional Rail Park and Ride Station" in Ramsey, New Jersey for a fixed price. On that same date, Shoemaker, along with Co-Defendant Atlantic Mutual Insurance Company executed, issued and delivered a payment bond, as required under Shoemaker's contract with Transit, in the amount of $1,927,600. Apparently, Centennial Insurance Company joined Atlantic Mutual Insurance Company as a co-surety on the project (jointly referred to as

Sureties), and on February 13, 2003, the Sureties issued and delivered an Increase Rider to the payment bond, increasing the sum of the bond to $27,567,600.

On December 30, 2002, Shoemaker entered into a written Subcontract Agreement with A.P. Construction, Inc. ("APC"), for construction services, including earthwork/bulk excavation, site utilities and erosion control/retention system, in consideration of payment of $1,316,000.

During the course of the excavation, the subsurface soil conditions actually encountered were different than those contemplated by the original bid documents. Shoemaker advised APC to continue with the excavation. Thereafter, Shoemaker submitted the additional costs of the excavation and soil preparation to Transit as an extra because the differing subsoils were not foreseen at the time of the bid, and were not factored into the contract price. Evidently, a claim in the amount of $997,215 was submitted on April 9, 2004 by Shoemaker to Transit; but it is unclear whether this is for APC's work exclusively or for other claims as well.

On August 23, 2004, APC performed its last work on the project. On October 19, 2004, Shoemaker submitted additional documents supporting its claim to Transit.

Over the course of the following four or five months, Shoemaker and Transit apparently engaged in settlement negotiations, unbeknownst to APC. On March 5, 2005, Shoemaker reached an agreement with Transit by which Shoemaker received a check from Transit in the amount of $1,391,475, which settled all claims including the "Soil Claim." Subsequent to the settlement, Shoemaker did not pay APC as was probably intended. In fact, APC did not learn of the settlement until December 2005.

In September 2005, Shoemaker filed for bankruptcy. Plaintiff instituted this action on March 2, 2006.

The parties concede the outcome of this case hinges on an interpretation of the Public Works Bond Act, N.J.S.A. 2A:44-143, et seq.

The Public Works Bond Act is designed to protect public agencies, laborers, and material suppliers who work on public projects from the insolvency of a general contractor, *Velez v. Wilkerson Electrical Services, Inc.*, 351 N.J.Super. 2, 796 A.2d 919 (App. Div. 2002), and offers broad protection to unpaid workers. *Quayle v. Tri-Con Const. of North Jersey, Inc.*, 295 N.J.Super. 640, 685 A.2d 988 (App. Div. 1996). The Act requires that a payment bond must be posited with the contracting agency on most public contracts by the general contractor to ensure payment to any beneficiary "who performed actual work or delivered materials to the project." N.J.S.A. 2A:44-145. For many decades, disputes arose with regard to the timeliness of claims and causes of action would accrue under the statute.  Subcontractors, many years after completing their work, would submit claims to the surety for work performed, as the statute, pre-1996, merely required a subcontractor, subsequent to the notice of the statement of the amount due, to bring an action within one year from the acceptance date of the project.

In 1996, the New Jersey legislature amended the Public Works Bond Act to add more stringent time lines in which a subcontractor must act in order to perfect a claim under the payment bond. The legislation provides that a "statement of the amount due" must be provided to the surety before the "expiration of one year from the last date on which work was performed." The statute reads in pertinent part:

> Any beneficiary . . . to whom any money shall be due on account of having performed any labor . . . for or about the construction, erection, alteration or repair of any public building or other public work or improvement, shall, at any time before the expiration of one year from the last date upon which such beneficiary shall have

3

> performed actual work or delivered materials to the project, in the case of a material supplier, furnish the sureties on the bond required by this article a statement of the amount due to him.

N.J.S.A. 2A:44-145.  In addition, the subcontractor must give 90 days notice to the surety prior to filing suit for payment under the provision of the payment bond. The statute reads:

> No action shall be brought against any of the sureties on the bond required by this article until the expiration of 90 days after provision to the sureties and the contractor of the statement of the amount due to him, but in no event later than one year from the last date upon which such beneficiary shall have performed actual work or delivered materials to the project.

N.J.S.A. 2A:44-145.

So long as the subcontractor complies with the time frames, the subcontractor may bring suit in its own name.  The statute mandates:

> If the indebtedness due to any person as shown by the statement required to be filed by N.J.S.A. 2A:44-145 shall not be paid in full at the expiration of 90 days from the date of notice of the amount due to the person, such person shall, within 1 year from the last date that work was performed or materials were supplied by that person, bring an action in his own name upon the bond required by this article.

N.J.S.A. 2A:44-146.  The Court must enforce the plain meaning of the statute. *Kutner Buick, Inc. v. Strelecki*, 111 N.J.Super. 89, 101 (Ch. Div. 1970).  If the statutory language is clear, the Court must give such language effect, unless it leads to unintentional or absurd results.  *U.S. v. Abraham*, 29 F. Supp. 2d 206 (DNJ 1998).  In this case, the parties acknowledge APC's last day on the job was August 23, 2004 and suit was instituted in March 2006, about 18 months later.  Neither party contends that a "statement of the amount due" was forwarded the Sureties prior to March 2006.  Under such circumstances, the claim is barred because APC did not file suit within one year of when it last performed work.  N.J.S.A. 4A:44-145, 146.

Plaintiff argues that the suit is timely because the amount in question did not become due until such time as Shoemaker resolved its claim for extras and received payment from Transit. Accordingly, plaintiff argues the indebtedness became due on March 5, 2005, and since APC filed suit on March 2, 2006 the claim is not time barred. Plaintiff also contends the statute is ambiguous because it does not define "indebtedness" or provide a formula for determining when an "amount" becomes due. The Court disagrees. The statute is clear. A subcontractor must "furnish the sureties on the bond . . . a statement of the amount due to him," at anytime "prior to the expiration of one year from the last date upon which such beneficiary shall have performed actual work." N.J.S.A. 4A:44-145. There is nothing ambiguous about this provision. When the language of the statute is plain, the sole function of the Court is to enforce the statute according to its terms. *Abdul-Akbar v. McKelvie*, 239 F. 3d 307 cert. denied, 533 U.S. 953 (3d Cir. 2001). The last date APC performed such work was August 23, 2004, and no notice of suit was filed until March 2006. Since about 18 months elapsed, the suit must be dismissed. Motion granted. The case is dismissed.

May 3, 2007                                              s/Peter G. Sheridan
                                                         PETER G. SHERIDAN, U.S.D.J.